**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

Case No. 0:25-cv-61142-RS

| | |
|---|---|
| KATHLEEN HEIDECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MOMNT SERVICING COMPANY LLC, | ) |
| ALCO WINDOWS AND DOORS LLC, | ) |
| CROSS RIVER BANK, TRANS UNION | ) |
| LLC, and EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC. | |
| | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOMNT SERVICING COMPANY
LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................3

STATEMENT OF FACTS ......................................................................................................4

MEMORANDUM OF LAW .................................................................................................**5**

    I.    Under the FAA, the Court must decide whether an arbitration agreement exists under state contract law. .................................................................................................................................5

    II.    Under New Jersey law, there is no valid and enforceable arbitration agreement. ..........................5

    a.    Momnt has not proven unambiguous assent to arbitration. ..................................................6

    b.    Momnt has not proven Ms. Heideck electronically assented to arbitration or intended to electronically sign the arbitration agreement, as required under the UETA...........................................10

    c.    Momnt has waived the delegation clause issue. ...................................................................13

    III.    The Court should exclude or strike certain testimony from Ms. Mcandrew's affidavit. .........13

CONCLUSION .................................................................................................................**14**

## INTRODUCTION

Momnt Servicing Company LLC asks this Court to compel Plaintiff Kathleen Heideck to arbitrate based on an arbitration agreement she neither saw nor consented to. Under New Jersey law, Momnt's motion fails for two reasons.[1]

*First*, Momnt bears the burden to show unambiguous assent to arbitration. *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014). Momnt cannot meet this burden. It relies solely on internal records that conflict with an affidavit from someone absent during the transaction between Ms. Heideck and Co-Defendant Alco Windows and Doors LLC. In contrast, Ms. Heideck—who was present— testifies under oath that she neither reviewed, knew about, nor consented to any arbitration terms. Instead, a salesperson for Alco handled the entire application on his device, never showing her the device or mentioning arbitration. Ms. Heideck further swears she never received, electronically signed, or acknowledged any loan documents containing an arbitration clause, and would have rejected financing had she known it required waiving her right to sue. New Jersey courts consistently deny arbitration under similar circumstances where mutual assent is questionable or absent.

*Second*, under New Jersey's Uniform Electronic Transactions Act ("UETA") and the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN Act"), an electronic signature is valid only if attributable to the signer and executed with intent. Momnt satisfies neither requirement. It provides no reliable evidence attributing the electronic signature to Ms. Heideck. Her sworn affidavit confirms the salesperson completed the entire electronic process on his device without her knowledge or consent to arbitration. Even if attribution were plausible, the record establishes Ms. Heideck had no intent to agree to arbitration—she never saw the terms, never consented electronically, and explicitly testifies she would have refused financing had she known of the arbitration requirement. Because Momnt fails to prove either attribution or intent, its motion fails.

The Court should deny Momnt's motion with prejudice.

---

[1] The parties agree that New Jersey law applies.

## STATEMENT OF FACTS

On June 12, 2024, David Soto, a sales representative for Alco Windows and Doors, visited Ms. Heideck's home around 2:00 pm to provide an estimate for impact window replacement. Heideck Aff. ¶ 3. During this visit, Mr. Soto measured the windows and discussed financing options, recommending Ms. Heideck finance the project through Momnt. *Id.* ¶¶ 5-6.

Ms. Heideck agreed to consider financing, and Mr. Soto personally completed the financing application on his own device. *Id.* ¶¶ 6-7. At no point did Mr. Soto provide Ms. Heideck with access to his device, nor did he request her to click, review, or consent to any arbitration agreement electronically. *Id.* ¶¶ 8-14. Mr. Soto never mentioned arbitration, nor did he disclose that agreeing to financing would waive Ms. Heideck's right to sue in court. *Id.*

After Mr. Soto finished the loan application, Ms. Heideck received a single text message around 4:14 p.m. asking her to approve a $12,000 payment to Alco. *Id.* ¶¶ 15-18; Exhibit A. This text message was the first and only communication Ms. Heideck received during the loan application process. *Id.* Around 4:30 pm, Mr. Soto left Ms. Heideck's home. *Id.* ¶ 4.

During the application process, Ms. Heideck did not receive any emails or text messages from Mr. Soto, Alco, or Momnt directing her to review or agree to any loan terms or arbitration provisions. Heideck Aff. ¶ 19. Ms. Heideck never received a copy of the loan agreement, nor the arbitration agreement, either electronically or physically, before or after June 12, 2024. *Id.* ¶ 20.

Several weeks passed without Alco initiating any work or contacting Ms. Heideck. Concerned, she attempted to contact Alco multiple times without response. Dkt. 1 ("Complaint") ¶¶ 21-22. Eventually, Ms. Heideck discovered that Alco had ceased operations and had not ordered any materials or applied for any permits. *Id.* ¶¶ 23-27. Ms. Heideck filed a fraud report with the Pembroke Pines Police Department, (*id* ¶ 28), and also contacted the alleged window manufacturer, Mr. Glass, confirming that no window order was ever placed by Alco. *Id.* ¶ 27.

Ms. Heideck promptly informed Momnt of these developments and requested cancellation of

the loan and a refund of payments already made. *Id.* ¶¶ 29-32. Ms. Heideck also disputed the Momnt account with Experian and TransUnion, providing detailed documentation and evidence that Alco had ceased operations and had not ordered any materials or applied for any permits. *Id.* ¶¶ 36-39. But both credit bureaus, relying on Momnt's incorrect verification, refused to correct the erroneous credit reporting, (*id* ¶¶ 40-43), leading Ms. Heideck to file this lawsuit.[2]

## MEMORANDUM OF LAW

### I.    Under the FAA, the Court must decide whether an arbitration agreement exists under state contract law.

The Federal Arbitration Act ("FAA") governs arbitration agreements and establishes a strong federal policy favoring their enforcement. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016).  This policy, however, doesn't extend to disputes over whether an arbitration agreement was formed. *Bazemore*, 827 F.3d at 1329 quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014).

Under the FAA, federal courts must enforce agreements to arbitrate "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Among those "grounds" are state-law questions on whether a contract was formed. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . [courts] should apply ordinary state-law principles that govern the formation of contracts."). It is therefore "well settled that where the dispute at issue concerns contract formation," it is "for courts to decide." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010). When determining whether an arbitration agreement exists, courts apply a summary judgment standard. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *see* Fed. R. Civ. P. 56(a).

### II.   Under New Jersey law, there is no valid and enforceable arbitration agreement.

Whether an arbitration agreement exists depends on state contract law. *First Options of Chicago,*

---

[2] At least sixteen lawsuits have been filed against Alco, several involving Momnt, for precisely the same conduct alleged here. https://wsvn.com/news/investigations/homeowners-speak-out-against-south-florida-window-company-facing-at-least-16-lawsuits/

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). New Jersey law applies here.

Under New Jersey law, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. *Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 442–45, 99 A.3d 306 (2014). The moving party must prove these elements by a preponderance of the evidence:

> [T]he party seeking to enforce [an] alleged contractual provision . . . has the burden to prove, by a preponderance of the evidence, that [the non-moving party] assented to it. Moreover, because the arbitration clause constitutes a waiver of [the non-moving party's] constitutional right to adjudicate this dispute in a court of law, [the moving party] must prove that [the nonmoving-party] had full knowledge of [its] legal rights and intended to surrender those rights.

*Midland Funding LLC v. Bordeaux*, 447 N.J. Super. 330, 336, 147 A.3d 885 (App. Div. 2016).

Only the second and third elements are at issue.

### a. Momnt has not proven unambiguous assent to arbitration.

Under New Jersey law, the party seeking to enforce an arbitration agreement bears the burden to prove clear and unambiguous assent. *Atalese*, 219 N.J. at 442. Unambiguous assent requires clear evidence that both parties understood and consented to arbitrate, expressly waiving the right to sue in court. *Knight v. Vivint Solar Developer, LLC*, 465 N.J. Super. 416, 425–26, 243 A.3d 956 (App. Div. 2020). "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." *Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 468 N.J. Super. 483, 498, 259 A.3d 867 (App. Div. 2021). Without that evidence, a valid arbitration agreement ceases to exist. *Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 468 N.J. Super. 483, 498, 259 A.3d 867 (App. Div. 2021).

Here, Momnt has not satisfied its burden. It relies entirely on internal electronic records and the affidavit of Lindsay McAndrew, an individual not present during the transaction, to claim Ms. Heideck consented electronically to the arbitration agreement. Dkt. 17 Mot. ¶¶ 7–8; Dkt. 17-2 McAndrew Aff. ¶¶ 13–15. Two critical flaws refute Momnt's argument.

First, Momnt has not established that Ms. Heideck had reasonable notice of the arbitration

6

clause. *Wollen*, 468 N.J. Super. at 498 ("An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence.") She explicitly denies seeing, reviewing, or consenting to any arbitration provision. Heideck Aff. ¶¶ 8-14, 19-26. Throughout the transaction, Mr. Soto controlled the entire process on his own device, without ever mentioning arbitration or showing Ms. Heideck the terms. *Id.* She never viewed Mr. Soto's device nor clicked any boxes or hyperlinks consenting to arbitration. *Id.* And had she been informed that agreeing would waive her right to court litigation, she states she would have declined. *Id.* ¶¶ 24. Thus, under New Jersey law, a valid and enforceable arbitration agreement was never formed.

Second, Momnt fails to offer reliable evidence showing Ms. Heideck herself consented electronically to arbitration. *See Atalese*, 219 N.J. at 442. Momnt's affidavit merely describes the system's general logging procedures, without verifying that Ms. Heideck personally performed the electronic actions. McAndrew Aff. ¶¶ 11, 13–15. But Momnt presents no evidence—such as IP addresses, secure login data, audit trails, or metadata—that links the clicks or consents directly to Ms. Heideck. Moreover, Momnt does not explain how its system could prevent or prove those actions weren't taken by a third party, such as those potentially taken by Mr. Soto, the salesperson controlling the electronic application.

Momnt's internal records further contradict Ms. McAndrew's account. While the affidavit claims electronic consent occurred at 7:22 pm, (Mcandrew Aff. ¶ 15), Momnt's own internal records suggests the loan agreement was approved at 2:29 pm, hours earlier. Dkt. 17-2 at p. 10. Additionally, Momnt lacks proof—like audit trails or delivery confirmations—that the loan agreement was actually sent to Ms. Heideck. Mcandrew Aff. ¶ 11. Contradicting Momnt's assertions, Ms. Heideck testifies that Mr. Soto left her home well before 7:22 pm, that she did not consent electronically or physically at any time, and that she never received an emailed agreement. Heideck Aff. ¶¶ 4, 21-22. Such fundamental discrepancies cast serious doubt on the credibility and accuracy of Momnt's evidence.

Under these circumstances, New Jersey courts consistently deny arbitration. In *Savage v. Trinity Solar, Inc.*, the court reversed an order compelling arbitration because the salesperson dominated the

7

electronic signing process and failed to provide the plaintiff with notice either orally or electronically of the arbitration agreement. *Savage v. Trinity Solar, Inc.*, No. A-0159-24, slip op. at 5–7, 11–16 (N.J. App. Div. Apr. 8, 2025). Like Ms. Heideck, the plaintiff certified that he was never told him about the arbitration provisions or showed him any documents, electronic or otherwise, that contained an arbitration provision.

> [T]he terms of the agreements were not visible on the screens Pennella permitted him to see.... Pennella never told him about the arbitration provisions or showed him any documents, electronic or otherwise, that contained an arbitration provision.

*Id.* slip op. at 6.

Based on these facts, the appellate court reversed the trial court's order compelling arbitration. *Id.* slip op. at 15-16.

Similarly, in *Knight v. Vivint Solar Developer, LLC*, a published opinion, the key dispute centered on whether the plaintiff electronically assented to arbitration when signing an agreement for solar panel installation. *Knight v. Vivint Solar Developer, LLC*, 465 N.J. Super. 416, 425–26, 243 A.3d 956 (App. Div. 2020). The plaintiff denied that the defendant's salesperson displayed the contract terms on the iPad or reviewed any of the terms with her; indeed, the plaintiff stated the salesperson never even "mention[ed] a contract" during the signing process. *Id.* at 421. Although the defendant produced an electronically signed purchase agreement featuring a checked box purportedly signifying arbitration consent, the plaintiff testified that no checkboxes appeared on the iPad screen when she signed. *Id.* While the salesperson conceded the screen showed only the signature line, he claimed he had "thoroughly" reviewed the agreement terms with the plaintiff. *Id.* Given this direct conflict, the Appellate Division reversed the order compelling arbitration concluding there were significant "questions of fact concerning the mutuality of assent to the arbitration provision, which is necessary to bind both parties to arbitration." *Id.* at 427.

And in *Mack v. Wells Fargo Bank, N.A.*, the plaintiff challenged whether a valid agreement to arbitrate was formed when he opened new accounts at Wells Fargo after experiencing fraudulent

withdrawals. *Mack v. Wells Fargo Bank, N.A.*, No. A-3319-23, slip op. at 10–12 (N.J. Super. Ct. App. Div. Feb. 18, 2025). The plaintiff stated that when opening the accounts, the bank manager instructed him to sign electronically on an iPad without disclosing the arbitration agreement, or even suggesting that he was signing a binding contract:

> At no time did the manager show me any paper documents or any electronic documents. I was not advised that I was signing any type of document, application or contract on the iPad…. I thought I was just acknowledging that I opened an account… and was giving a sample of my handwriting.

*Id.* slip op. at 6.

Wells Fargo provided documents containing electronic signatures but failed to present evidence contradicting the plaintiff's account or showing that he had actually seen or knowingly assented to the arbitration terms. The court emphasized that the bank had the burden to establish mutual assent by a preponderance of the evidence and found that the bank "failed to meet this burden" given the plaintiff's unrebutted testimony. *Id.* slip op. at 14. Thus, the Appellate Division reversed the trial court's order compelling arbitration without requiring a plenary hearing, concluding that the lack of evidence of mutual assent was dispositive. *Id.* slip op. at 14-15.

Here, like in *Savage, Knight,* and *Mack*, Momnt has failed to demonstrate unambiguous assent by Ms. Heideck. Ms. Heideck explicitly denies having reviewed, consented to, or even been shown the arbitration terms during the transaction. She explains that the salesperson, Mr. Soto, controlled the entire process on his device without showing her any underlying terms, mentioning arbitration, or providing her an opportunity to consent electronically. Heideck Aff. ¶¶ 8-31.

Under similar circumstances, this Court in *Mochan v. Madison Reed, Inc.*, naturally denied compelling arbitration because the defendant never provided the Court with "any evidence that shows Plaintiff actually saw Defendant's terms, including the arbitration agreement." *Mochan*, 2023 WL 5266322, at *2 (denying motion to compel arbitration because defendant did not prove the plaintiff "unambiguously manifest[ed] her assent to be bound by arbitration"). The result should be no different

9

here.

Thus, the Court should deny the motion to compel arbitration because Momnt has failed to establish essential elements of its case—clear and unmistakable assent and a meeting of the minds—on which it bears the burden of proof. *See Bazemore*, 827 F.3d at 1334 (applying summary judgment standard to deny movant arbitration as a matter of law without the need for a trial).

**b. Momnt has not proven Ms. Heideck electronically assented to arbitration or intended to electronically sign the arbitration agreement, as required under the UETA.**

New Jersey's Uniform Electronic Transactions Act ("UETA") and the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN Act") place electronic signatures on equal footing with ink signatures. N.J. Stat. Ann. § 12A:12-7 (West); 15 U.S.C.A. § 7001(a) (West). Momnt has failed to prove two critical requirements under both statutes: (1) the electronic signature is attributable to Ms. Heideck; and (2) Ms. Heideck intended to adopt it.

First, the party seeking to enforce an electronic signature bears the burden to prove that the signature is attributable to the person to be bound. *See Knight,* 465 N.J. Super. at 425–26, 243 A.3d at 962 (proponent must prove mutual assent); *Mack,* No. A-3319-23, slip op. at 10–12; *Savage*, No. A-0159-24, slip op. at 13–14.

Both E-SIGN and the UETA generally define an electronic signature as "electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." N.J. Stat. Ann. § 12A:12-2; see 15 U.S.C.A. § 7006(5). The UETA makes clear that "an electronic record or electronic signature is attributable to a person if it was the act of the person," which may be shown "in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or signature was attributable." N.J. Stat. Ann. § 12A:12-9(a). If someone other than the consumer clicked a button or checked a box, the electronic act cannot be attributed to the consumer and is therefore invalid.

That is exactly what happened here.

10

According to her sworn testimony, Ms. Heideck denies receiving any email or text inviting her to apply for the loan or directing her to Momnt's electronic platform. Heideck Aff. ¶¶ 7-19. Instead, she testified that Mr. Soto completed the entire electronic process himself on his own device, *id.*, that she never clicked a button, checked a box, or otherwise consented to any arbitration agreement, and that she never authorized Mr. Soto (or anyone else) to consent for her. *Id.* ¶¶ 7-25. Thus, any electronic assent cannot be attributed to Ms. Heideck, and Momnt has provided nothing to prove otherwise.

The best Momnt can muster is a lone witness, Ms. McAndrew, who asserts that electronic consent occurred by clicking boxes next to a statement acknowledging the documents were reviewed. Mcandrew Aff. ¶ 15. Yet she was not present during the transaction, so she has no personal knowledge of the event. *See Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 Fed. Appx. 896, 902 (11th Cir. 2019). And its own internal records that do not identify the user, IP address, device ID, or any multifactor credential tying the clicks to Ms. Heideck. Momnt's evidence is simply insufficient to show attribution under under § 12A:12-9(a).

Ms. Heideck's affidavit strengthens this conclusion. Ms. Heideck—who was present during the transaction—denies checking any boxes or hyperlinks, (Heideck Aff. ¶¶ 8-15, 19-23, 28-29), testifying explicitly: "Any actions taken on Momnt's platform on June 12, 2024, were taken by someone other than me." *Id.* ¶ 30. Indeed, she never logged into Momnt's platform, never saw the loan documents, and never provided consent for Mr. Soto to sign on her behalf. *Id.* ¶¶ 8-31.

This scenario closely tracks cases where courts found an absence of valid attribution. For example, in *Garcia v. Stoneledge Furniture LLC*, 321 Cal. Rptr. 3d 181 (Ct. App. 2024), the appellate court affirmed the denial of a motion to compel arbitration where the defendant failed to carry its evidentiary burden since the evidence did not show that "only" the plaintiff could have placed the electronic signature on the arbitration agreement. *Garcia*, 102 Cal. App. 5th 41.

Momnt is in a similarly weak position. Its evidence suggests *someone* clicked the boxes, but Ms. Heideck has testified that *she* did not. Instead, the evidence shows Mr. Soto had the means and

opportunity to affix Ms. Heideck's electronic signature without her knowledge or consent, and Momnt's evidence has failed to prove otherwise. The electronic acts Momnt relies on are therefore not attributable to Ms. Heideck in any legally recognizable form.

Second, and even if attribution were possible, Momnt has no evidence that Ms. Heideck intended to sign the arbitration agreement. A fundamental principle under both E-SIGN and UETA is that a signature is only valid if the person intended to sign the record. N.J. Stat. Ann. § 12A:12-2; 15 U.S.C.A. § 7006(5). An electronic action (such as checking "I agree") can serve as a signature *only if* it was executed or adopted by the person *"with the intent to sign the record."* N.J. Stat. Ann. § 12A:12-2 (emphasis added). Intent is determined from "the context and surrounding circumstances." *Id.*

The evidence here shows the opposite of intent. Ms. Heideck's testimony makes clear she had no intent in agreeing to arbitrate. She did not operate the Momnt interface at all, did not click any boxes or hyperlinks, and thus never had any intent to agree to arbitrate. Heideck Aff. ¶¶ 8-32. On the contrary, she believed she was only being approved for financing based on Mr. Soto's oral explanation and had no idea that any arbitration clause was being agreed to. *Id.* ¶ 28. She states unequivocally: "At no time did I knowingly assent to any arbitration provision." *Id.* ¶ 29. And further that: "If someone had told me that agreeing to finance through Momnt would waive my right to sue in court, I would not have agreed to waive my rights." *Id.* ¶ 25. This evidence shows the opposite of an intent to agree to arbitrate.

Even aside from her subjective intent, there is no objective manifestations of assent. Normally, the objective act would be the user electronically acknowledging consent after reviewing the document. But Ms. Heideck never reviewed the arbitration agreement or clicked a box indicating she had—Mr. Soto or someone else did—and these actions cannot be imputed to her. Heideck Aff. at ¶¶ 8-32. Thus, Ms. Heideck never intended to electronically consent to arbitration.

New Jersey courts have consistently refused to compel arbitration in analogous situations where the consumer's assent to arbitration was dubious or absent. *See Knight,* 465 N.J. Super. at 425–26, 243 A.3d at 962; *Mack,* No. A-3319-23, slip op. at 10–12; *Savage,* No. A-0159-24, slip op. at 13–14.

### c. Momnt has waived the delegation clause issue.

In passing, Momnt suggests a delegation clause exists in the arbitration agreement. Mot. at ¶ 21. But Momnt only provides a single sentence on this issue—without any argument—and therefore has waived the issue. *See Cont'l Tech. Services, Inc. v. Rockwell Intern. Corp.*, 927 F.2d 1198 (11th Cir. 1991); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Horowitz v. Allied Marine, Inc.*, 21-CV-60358, 2023 WL 3568113, at *19 (S.D. Fla. May 19, 2023)023) ("a party's failure to cite relevant legal authorities for its position is reason enough to deny that party's motion.")

And regardless, enforceability of a delegation clause is simply a matter of contract, same as the issue of the enforceability of the arbitration provision as a whole. The Supreme Court has held that delegation clauses—like other types of arbitration clauses—are subject to the normal rules of contract law, including defenses to contracts. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("generally applicable contract defenses" may be applied to invalidate an arbitration clause, including a delegation clause). For the same reasons that no valid arbitration agreement exists—lack of unambiguous assent and no meeting of the minds—there is likewise no valid delegation clause.

## III.   The Court should exclude or strike certain testimony from Ms. Mcandrew's affidavit.

An affidavit supporting summary judgment must be based on personal knowledge, set forth facts admissible in evidence, and demonstrate the affiant's competence to testify on the stated matters. Fed. R. Civ. P. 56(c)(4); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002). Here, Momnt relies on the affidavit of Ms. Mcandrew to support its motion, but she lacks personal knowledge of the interactions between Ms. Heideck and Mr. Soto because she wasn't present during the transaction.

Here, Ms. McAndrew's affidavit repeatedly asserts that Ms. Heideck took specific actions during the loan application process with Mr. Soto. *See* Mcandrew Aff. ¶¶ 13-16, 18. But Ms. McAndrew has no personal knowledge on which she bases her conclusions. Ms. McAndrew was not present during the

transaction between Alco and Ms. Heideck, and her affidavit makes clear she is merely recounting what Momnt's internal records purportedly show. Because Ms. McAndrew was not present during the transaction and did not observe Ms. Heideck electronically consenting, she lacks personal knowledge to competently testify about actions she attributes to Ms. Heideck. *Pace*, 283 F.3d 1275; *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 Fed. Appx. 896, 902 (11th Cir. 2019) ("Garside was not present for the loading of the Combine, so he lacks personal knowledge.") Thus, paragraphs 13-16 and 18 of Ms. McAndrew's affidavit, where she attributes electronic actions to Ms. Heideck, should be excluded, struck, or not considered.

## CONCLUSION

Momnt seeks to compel Ms. Heideck into arbitration based exclusively on an arbitration agreement that was never formed under New Jersey law. Momnt has not shown proof of unambiguous assent to the arbitration agreement and has failed to satisfy the requirements for a legally binding arbitration agreement under the UETA and E-Sign Act. For all of these reasons, Momnt's Motion to Compel Arbitration should be denied in its entirety.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Ms. Heideck requests a hearing on the merits of this motion. A hearing is desired and would be helpful to the Court because of the complexity and nuances of the issues. The time required for argument is estimated to be approximately one hour.

Dated: August 6, 2025,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. #1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile: (561) 473-2946

Christopher W. Legg, Esq.
Florida Bar No: 004460

Phone: 954-962-2333
The Consumer Lawyers PLLC
412 E. Madison St. Ste 916
Tampa, Florida 33602
Chris@TheConsumerLawyers.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq.
FL Bar No: 0115546